# UNITED STATES DISTRICT COURT
## Eastern District Of Massachusetts

|  |  |
|---|---|
| Boston Financial Corporation )<br><br>*Plaintiff,* )<br><br>v. )<br><br>Prime Star, LLC, Deborah A. Bartolini and Gregory C. )<br>Grant, )<br><br>*Defendants.* ) | Docket No. _____<br><br>04 - 11499 RCL<br><br>MAGISTRATE JUDGE _____ |

FILING FEE PAID:
RECEIPT # _____
AMOUNT $ _____
BY DPTY CLK _____
DATE _____

## Verified Complaint

### Parties

1. The Plaintiff, Boston Financial Corporation ("BFC") is a Massachusetts corporation engaged in the business of factoring (i.e., purchasing accounts receivable from other businesses) with its principal place of business in Boston, Massachusetts.

2. The Defendant, Prime Star, LLC ("Prime Star") is a limited liability company organized under the laws of Rhode Island with a principal place of business at 144A Danielson Pike, Foster, Rhode Island; its registered agent is Gordon A. Carpenter at 91 Friendship Street, Providence, Rhode Island, 02903.

3. The Defendant, Deborah A. Bartolini ("Bartolini") is an individual residing at 12 Goldmine Road, Foster, Rhode Island, 02825.

4. The Defendant, Gregory C. Grant ("Grant") is an individual residing at 7 High Street, Barrington, Rhode Island, 02806.

### Jurisdiction and Venue

5. This Court has diversity jurisdiction over this matter based on 28 U.S.C. § 1332(a)(1) in that the defendants are citizens of Rhode Island and the plaintiff is a citizen, for diversity purposes, of the Commonwealth of Massachusetts. The amount in controversy is not less than $141,759.21. The defendant is subject to the personal jurisdiction of this Court because it knowingly, intentionally, and with full knowledge that claims might arise from its operations in this jurisdiction, entered into a contract with BFC,

```
05/13/04   2:51:29 PM                    BOSTON FINANCIAL CORPORATION                         PAGE   1
REPORT P124                                 INVOICE AGING REPORT                           NS3.72.12r  4/01
                          FOR CLIENT 16600, INVOICES SORTED BY INVOICE DATE (ASCENDING)
                                              AS OF 05/13/04
                                             COMPANY ID 01                                 (Report Format 3)


        PRIME STAR, LLC.                                                             Client ID: 16600
        144A DANIELSON PIKE
        FOSTER, RI 02825
```

| Invoice Number | Debtor Name | Inv Date | Due Date | Pur Date | Inv Dys | Invoice Balance | Date Paid /Credited | Amount Paid | Credit/ Chargeback |
|---|---|---|---|---|---|---|---|---|---|
| Relationship ID: 16600 | Verification Name: PRIME STAR, LLC. | | | | | | | | |
| 1112 | PROFESSIONAL SATELLITE AND | 12/09/03 | 01/08/04 | 12/11/03 | 156 | 7,625.00 | | 0.00 | 0.00 |
| 1113 | PRIME INSTALLS, L.L.C. | 12/09/03 | 01/08/04 | 12/10/03 | 156 | 3,277.00 | | 0.00 | 0.00 |
| 1116 | DSI SYSTEMS, INC. | 12/16/03 | 01/15/04 | 12/16/03 | 149 | 1,310.00 | | 0.00 | 0.00 |
| 1120 | DSI SYSTEMS, INC. | 12/19/03 | 01/18/04 | 12/19/03 | 146 | 1,130.00 | | 0.00 | 0.00 |
| 1129 | PRIME INSTALLS, L.L.C. | 01/02/04 | 02/01/04 | 01/02/04 | 132 | 4,605.00 | | 0.00 | 0.00 |
| 1130 | PROFESSIONAL SATELLITE AND | 01/02/04 | 02/01/04 | 01/02/04 | 132 | 4,180.00 | | 0.00 | 0.00 |
| 1133 | PRIME INSTALLS, L.L.C. | 01/05/04 | 02/04/04 | 01/06/04 | 129 | 42,570.00 | | 0.00 | 0.00 |
| 1134 | PROFESSIONAL SATELLITE AND | 01/05/04 | 02/04/04 | 01/05/04 | 129 | 9,745.00 | | 0.00 | 0.00 |
| 1142 | PROFESSIONAL SATELLITE AND | 01/15/04 | 02/14/04 | 01/15/04 | 119 | 3,810.00 | | 0.00 | 0.00 |
| 1147 | PRIME INSTALLS, L.L.C. | 01/20/04 | 02/19/04 | 01/21/04 | 114 | 6,087.00 | | 0.00 | 0.00 |
| 1151 | PRIME INSTALLS, L.L.C. | 01/26/04 | 02/25/04 | 01/27/04 | 108 | 8,081.00 | | 0.00 | 0.00 |
| 1153 | PRIME INSTALLS, L.L.C. | 01/30/04 | 02/29/04 | 01/30/04 | 104 | 2,814.00 | | 0.00 | 0.00 |
| 1157 | PRIME INSTALLS, L.L.C. | 02/02/04 | 03/03/04 | 02/03/04 | 101 | 1,852.00 | | 0.00 | 0.00 |
| 1159 | PRIME INSTALLS, L.L.C. | 02/06/04 | 03/07/04 | 02/06/04 | 97 | 2,323.00 | | 0.00 | 0.00 |
| 1161 | PRIME INSTALLS, L.L.C. | 02/09/04 | 03/10/04 | 02/09/04 | 94 | 1,980.00 | | 0.00 | 0.00 |
| 1163 | PRIME INSTALLS, L.L.C. | 02/12/04 | 03/13/04 | 02/12/04 | 91 | 4,469.00 | | 0.00 | 0.00 |
| 1164 | PROFESSIONAL SATELLITE AND | 02/12/04 | 03/13/04 | 02/12/04 | 91 | 4,625.00 | | 0.00 | 0.00 |
| 1165 | PRIME INSTALLS, L.L.C. | 02/17/04 | 03/18/04 | 02/18/04 | 86 | 5,112.00 | | 0.00 | 0.00 |
| 1167 | PRIME INSTALLS, L.L.C. | 02/19/04 | 03/20/04 | 02/20/04 | 84 | 2,855.00 | | 0.00 | 0.00 |
| 1170 | PROFESSIONAL SATELLITE AND | 02/23/04 | 03/24/04 | 02/23/04 | 80 | 8,685.00 | | 0.00 | 0.00 |
| 1171 | PRIME INSTALLS, L.L.C. | 02/23/04 | 03/24/04 | 02/23/04 | 80 | 1,330.00 | | 0.00 | 0.00 |
| 1173 | PRIME INSTALLS, L.L.C. | 02/27/04 | 03/28/04 | 02/27/04 | 76 | 2,000.00 | | 0.00 | 0.00 |
| 1176 | PROFESSIONAL SATELLITE AND | 03/01/04 | 03/31/04 | 03/01/04 | 73 | 3,660.00 | | 0.00 | 0.00 |
| 1177 | PRIME INSTALLS, L.L.C. | 03/04/04 | 04/03/04 | 03/05/04 | 70 | 1,077.00 | | 0.00 | 0.00 |
| 1178 | PROFESSIONAL SATELLITE AND | 03/04/04 | 04/03/04 | 03/05/04 | 70 | 6,557.21 | | 0.00 | 0.00 |

```
                                                                     ============
                              CLIENT TOTALS:                          141,759.21
```

Aging By Invoice Date
-----------------------------------

```
1-30
31-60
61-90          31,276.21    22.06%
91-120         36,041.00    25.42%
121-150        63,540.00    44.82%
151-180        10,902.00     7.69%
Over 180

               --------------
Totals:        141,759.21
```

# EXHIBIT A

# EXHIBIT C

# FIND AND REPLACE LEGEND - - Consulting/Factoring Agreement

F:\AGR_DOCS\ALLFORMS_RV3_2.doc, 6/29/2004, 9:43 AM, Revised 9/3/02

| | | | | |
|---|---|---|---|---|
| CURRDATE | June 23, 2003    KDATE June 24, 2003 | | | |
| KDAY | Tuesday    KTIME 10:00 AM    { } | FILE# | | { } |
| thDATE | 24th of June, 2003 | LOCDT | June 20, 2003 | { } |
| CLIENT | Prime Star, LLC.    { } | MIN/MO | | { } |
| CL-INIT | PSL    { } | ADD-DISC | | { } |
| ADDRESS | 160 Burnside Street    { } | TERM | | { } |
| CSZ | Cranston, RI 02910    { } | $TERM | | { } |
| | | BUYBKDYS | Seventy-Five | { } |
| | | PFBUYBKDYS | Sixty | { } |
| 49% Member | Gregory C. Grant    { } | ADDITEMDT | | { } |
| PRESADD | 7 High Street    { } | | | |
| PRESCSZ | Barrington, RI 02806    { } | DIRECTOR1 | | { } |
| PRESSS# | 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    { } | DIRECTOR2 | | { } |
| PRESTEL | (401) 246-2140    { } | DIRECTOR3 | | { } |
| 51% Member | Deborah A. Bartolini    { } | TIN | 02-0667598 | { } |
| CLERK | | FAX# | (401) 941-3210 | { } |
| | | | | |
| PARTNER-2 | { } | NOTARY | Erin Finnell Hall | { } |
| PART2ADD | { } | NOTARYSTATE | Massachusetts | { } |
| PART2CSZ | { } | COMPANY | Boston Financial Corporation | { } |
| PART2TEL | { } | ADDRESS | 197 Eighth Street, Suite 2000 | { } |
| | | CSZ | Charlestown, MA 02129 | { } |
| PARTNER-3 | { } | TELEPHONE | (617) 286-1070 | { } |
| PART2ADD | { } | FAX# | (617) 286-1001 | { } |
| PART2CSZ | { } | E-MAIL | erin.hall@bostonfinancialcorp.com | { } |
| PART2TEL | { } | EXPIRES | November 27, 2009 | { } |
| | | COUNTY | Suffolk | { } |
| ST-INC | Rhode Island    { } | | | |
| | | | | |
| ADV | Eighty    ADV% 80.0    { } | | | |
| FBASDISC% | 2.0    PFBASDISC% 2.0 | | | |
| DAILYDISC% | 0.10    BP. 0.0010 | | | |
| PFADV | Sixty    PFADV% 60.0    { } | | | |
| PFDISC% | 0.10    PFBP. 0.0010 | | | |
| MINDISC | Two    PFMINDISC Two | BROKER | None | { } |
| | | BROKERTITLE | | { } |
| AR1 | Prime Installs Corp.    { } | BROKERCO | | { } |
| ADD1 | 126 Murray Hill Road, Suite B    { } | BROKERADD | | { } |
| CSZ1 | Southern Pines, NC 28387    { } | BROKERCSZ | | { } |
| | | | | |
| AR2 | Professional Satellite & Communications, LLC    { } | | | |
| ADD2 | 5590 Morehouse Drive    { } | | | |
| CSZ2 | San Diego, CA 92121    { } | | | |
| | | GUAR1 | Deborah A. Bartolini | { } |
| AR3 | { } | GUAR1ADD | 12 Goldmine Road | { } |
| ADD3 | { } | GUAR1CSZ | Foster, RI 02825 | { } |
| CSZ3 | { } | GUAR1TEL | (401) 397-6254 | { } |
| | | | | |
| AR4 | { } | GUAR2 | Gregory C. Grant | { } |
| ADD4 | { } | GUAR2ADD | 7 High Street | { } |
| CSZ4 | { } | GUAR2CSZ | Barrington, RI 02806 | { } |
| | | GUAR2TEL | (401) 246-2140 | { } |
| AR5 | { } | | | |
| ADD5 | { } | GUAR3 | | { } |
| CSZ5 | { } | GUAR3ADD | | { } |
| | | GUAR3CSZ | | { } |
| INSAGT | Lori Thomas    { } | GUAR3TEL | | { } |
| AGENCY | Butler & Messier, Inc.    { } | | | |
| AGTADD | 1401 Newport Avenue    { } | GCORP1 | | { } |
| AGTCSZ | Pawtucket, RI 02861    { } | GCORP1ADD | | { } |
| | | GCORP1CSZ | | { } |
| INSAGT2 | { } | GCORP1PRES | | { } |
| AGENCYC2 | Paychex Agency, Inc.    { } | GCORP1TREAS | | { } |
| AGTADD2 | 430 Linden Avenue, Suite 200    { } | GCORP1CLRK | | { } |
| AGTCSZ2 | Rochester, NY 14625    { } | GCORP2 | | { } |
| | | GCORP2ADD | | { } |
| UCC-S | | GCORP2CSZ | | { } |
| UCC-SADD | { } | GCORP2PRES | | { } |
| UCC-SCSZ | | GCORP2TREAS | | { } |
| UCC-S$ | #UCC    { } | GCORP2CLRK | | { } |

Rv3.2-9/3/02

This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance by Client of the Obligations and is in no way conditioned upon any requirement that BFC first attempt to collect or enforce any of the Obligations from or by Client or any other party primarily or secondarily liable with respect thereto, or resort to any security or other means of obtaining payment or satisfaction of any of the obligations of Client to BFC now or at any time in effect, or upon any other contingency whatsoever.

BFC shall be at liberty, without giving notice to or obtaining the assent of undersigned and without relieving undersigned of any liability hereunder, to deal with Client and with each other party who now is or after the date hereof becomes liable in any manner for any of the Obligations, in such manner as BFC in it sole discretion deems fit, and to this end undersigned grants to BFC full authority, in BFC's sole discretion, to do any or all of the following things: (a) extend credit, make loans and afford other financial accommodations to the Client at such times, in such amounts and on such terms as BFC may approve, (b) vary the terms and grant extensions or renewals of any present of future indebtedness or obligation of Client or of any other party to BFC, (c) grant time, waivers and other indulgences in respect thereto, (d) vary, exchange, release or discharge, wholly or partially, or delay in or abstain from perfecting and enforcing any security or guaranty or other means of obtaining payment of any of the obligations which BFC how has or acquires after the date hereof, (e) accept partial payments from Client or any such other party, (f) release or discharge, wholly or partially, any endorser or guarantor, or (g) compromise or make any settlement or other arrangement with Client or any such other party.

The undersigned waives notice of acceptance hereof, notice of any action taken or omitted by BFC in reliance hereon, and any requirement that BFC be diligent or prompt in making demands hereunder, giving notice of any default by Client or asserting any other right of BFC hereunder. The undersigned also irrevocable waives, to the fullest extent permitted by law, all defenses which at any time may be available in respect of the undersigned's obligations hereunder, including but not limited to, any homestead exemption, statute of limitations, valuation, stay, moratorium law or other similar law now or hereafter in effect and all suretyship defenses.

If for any reason any portion of this Guaranty or a related document is deemed or ruled to be invalid for any reason whatsoever, then in such event all other portions of this Guaranty and related documents shall remain in full force and effect.

DATED: At _____Charlestown_____, Massachusetts this 24th day of June, 2003.

**Attest:**

Individually:
Signed: _____
Name: Gregory C. Grant
Address: 7 High Street
City,St,Zip: Barrington, RI 02806
Telephone: (401) 246-2140

Signed: _____
Name: Deborah A. Bartolini
Address: 12 Goldmine Road
City,St,Zip: Foster, RI 02825
Telephone: (401) 397-6254

**ACKNOWLEDGMENTS:**

(Individual)

COMMONWEALTH OF MASSACHUSETTS

County of _____Suffolk_____

On this 24th day of June, 2003, before me, a Notary Public, personally appeared **Gregory C. Grant** and **Deborah A. Bartolini** who is/are personally known to me or has satisfactorily proved to me that he/she/they is/are the person(s) identified above and he/she/they did, before me, this date execute the foregoing Guaranty Agreement and acknowledged the same as his/her/their free act and deed for the purposes contained therein.

Notary Public: _____, Erin Finnell Hall
My commission expires: _____November 27, 2009_____.

Rv3.2-9/3/02

## CONSULTING/FACTORING/SECURITY AGREEMENT

**AGREEMENT** is made this date, June 24, 2003, by and between **BOSTON FINANCIAL CORPORATION**, hereinafter called "BFC" and **Prime Star, LLC.** hereinafter called "CLIENT".

### PRELIMINARY STATEMENT

The Client has sought out BFC due to certain cash flow needs currently being experienced by the Client. The Client has the option to seek conventional bank financing but the Client chooses not to.

BFC is willing to work with the Client to build the Client's financial strength while, at the same time, solving the Client's financial cash flow constraints by entering into recourse factoring with the Client.

The Client wishes to retain all ownership in the Client's business. Therefore, the Client chooses not to obtain financing from a venture capital firm which would require constraints upon the Client's management of Client's business, as well as requiring the giving up of a significant part of the ownership of the Client's business.

The Client recognizes, however, that since BFC will be purchasing Client's accounts without a long relationship with the Client, BFC will be taking severe risks. As a result, the Client recognizes that BFC will not act as a bank by merely providing funds nor as a venture capitalist requiring managerial control but that it will involve a combination of those factors under which BFC will be actively involved in the administration of the accounts receivable function of the Client's business, the collections, monitoring, oversight, credit evaluations, contract and purchase order review, bid review, management consultation, risk management, quality control, lien search and monitoring periodic reports, credit negotiations, vendor relations and customer relations and ongoing business consultations in connection with the operation and direction of the Client's business. The Client recognizes that the functions to be provided by BFC will be extensive and labor intensive and require full cooperation of the Client with BFC in order to achieve Client's goals of developing Client's business.

The Client also recognizes that although the factoring of the Client's accounts is of critical importance to the Client, the other services provided by BFC are an integral part of the consultation and services provided by BFC to the Client.

The Client further recognizes that although the discount (hereinafter more particularly described) arrived at by BFC in purchasing the Client's accounts is the primary direct charge to the Client, that charge includes all the services hereinbefore described, as well as a return on the funds advanced by BFC to the Client for the purchase of Client's accounts.

The Client acknowledges that this Agreement is a sophisticated business transaction involving BFC's taking security on all of the Client's assets, obtaining personal guarantees, imposing restraints on the operation of the Client's business and involving warranties and representations in order to induce BFC to enter into this transaction.

The Client further acknowledges that the documents evidencing the relationship between BFC and the Client have been presented to the Client well in advance of the signing thereof and that Client has had the opportunity of having the documents reviewed by the Client's attorney, accountant or other counselor or advisor and that BFC has advised the Client that it should have the documents reviewed by the Client's attorney, accountant and/or other counselor or advisor.

The client further acknowledges that the discount applies to both accounts purchased by BFC and to funds advanced by BFC to the Client so that the Client can create accounts to be purchased by BFC which advances usually take the characterization of line of credit financing. The Client further recognizes the amount of funds advanced directly to the Client or advanced on account of the purchase of the accounts receivable and the amount of the discount charged by BFC is a result of the evaluation of the risk as determined by BFC in making such advances or purchases and the time and effort devoted by BFC to the Client's business.

The Client further acknowledges that the total amount of the discount charged by BFC is a function of the discount percentage rate assigned and the amount of time that the account remains outstanding until payment is received and is not calculated on an interest rate per annum basis. The factoring and prefunding of accounts (hereinafter described) is costly and should be used by the Client conservatively.

The Client further acknowledges that the relationship between BFC and the Client is a "full recourse" relationship in that if the accounts that BFC purchases fail to pay within the time periods required, hereinafter set forth, the Client will have the obligation to repurchase the account from BFC, including the payment of the discount and that as such the Client is guaranteeing to BFC that the account receivable is not only fully earned and collectable as a matter or right but that the obligor under the account receivable is creditworthy and will pay its obligation within the agreed number of days after the account is purchased by BFC as set forth below.

**NOW, THEREFORE,** in consideration of the foregoing, the parties agree as follows:

1.  **Purchase of Accounts and Settlement:** The Client will, from time to time, offer to sell to BFC, and BFC will purchase from Client, such open accounts receivable, invoices, book debts, notes, drafts, acceptances, contracts, and choses in action (hereinafter collectively called "Accounts" and individually called "Account") arising in the ordinary course of business of Client., as are acceptable to BFC. BFC will advance to Client at the time of the purchase of Accounts a percentage of the face value thereof (hereinafter called an "Advance"); and the remainder (hereinafter called the Reserve) less any charges, discount or deductions and plus any overpayments, will be paid to Client within approximately seven (7) days after payment in full and receipt of cleared funds on any such Accounts to BFC by the parties indebted thereon (hereinafter) referred to as the "Debtor(s)"). The amount of the Advance and Reserve will be agreed to by BFC and Client on the date hereof. The Client recognizes that any amount held in Reserve represents bookkeeping entries and not cash funds. No such payments need be made by BFC in respect of any Reserve, if Client is in default in the performance of any provisions of this agreement with respect to any Account whatsoever. Client covenants and agrees to execute a schedule of Accounts, in a form approved by BFC, vesting in BFC, all the Client's right, title and interest in and to said Accounts, with any securities or guarantees therein and in and to the property evidenced thereby, including the right of stoppage in transit.

2.  **Charges:** BFC shall deduct from Reserves, the charges shown on the rate sheet attached hereto (hereinafter called "Discount") as compensation to BFC for the Advance made to the Client and the Services performed for the Client's benefit by BFC pursuant to the terms hereof. In addition, Client shall pay the cost of filing any financing statement(s) or any other public record(s) (in addition to the initial UCC filings signed at the closing)

INITIALS: Client: _____ _____ _____        BFC: _____



Rv3.2-9/3/02

# GUARANTY AGREEMENT
## by Gregory C. Grant and Deborah A. Bartolini

IN ORDER to induce Boston Financial Corporation (hereinafter called "BFC") to enter into the Consulting/Factoring/Security Agreement (hereinafter called "Agreement") effective as of the date hereof with **Prime Star, LLC.** (hereinafter called "Client") and/or to continue under and at the same time to refrain from terminating BFC's present Agreement with the Client, and in consideration of BFC's so doing and/or in consideration of any fundings, advances, payments, extensions of credit, benefits or financial accommodations heretofore or hereafter made, granted or extended by BFC or which BFC has or will make, grant or extend to or for the account of the Client whether under the Agreement or otherwise, and/or in consideration of any obligation heretofore or hereafter incurred by the Client to BFC whether under the Agreement or otherwise, and for other good and valuable consideration, receipt of which is hereby acknowledged, the undersigned and each of them, jointly and severally (hereinafter referred to, whether one or more, as the "undersigned") unconditionally guarantee to BFC and agree to be primarily liable to BFC for (1) the due performance of the Agreement and all the Client's contracts and agreements with BFC, both present and future, and any and all subsequent renewals, continuations, modifications, supplements and amendments thereto and (2) the payment to BFC of any and all indebtedness, obligations, liabilities and sums which may be presently due and owing or which shall in the future become due and owing to BFC from the Client, including without limitation, any and all amounts properly charged or chargeable to the account of the Client and any and all obligations incurred and sums properly due or to become due from the Client, whether by way of service charge, earned discount, out-of-pocket expense or otherwise, under the Agreement and any other contract or agreement with the Client and any renewals, continuations, modifications, supplements and amendments thereto, as well as any and all other obligations of the Client incurred and other sums due or to become due to BFC, whether or not such obligations or indebtedness of the Client shall arise under any contract or agreement or shall be represented by or be payable under instruments of indebtedness; and, in addition, the undersigned shall be liable to BFC for all reasonable costs and expenses incurred by BFC in attempting or effectuating collection hereunder, including reasonable attorney's fees, if any claim hereunder is referred to an attorney or collection thereof is undertaken by an attorney or a professional collection service (the "Obligations").

All sums at any time to the credit of the undersigned and any property of the undersigned at any time in BFC's possession or in which BFC has a lien or security interest shall be deemed held by BFC as security for any and all of the undersigned's obligations to BFC, no matter how or when arising and whether under this or any other instrument, agreement or other document given to BFC. The undersigned hereby waives notice of acceptance hereof and all notices and demands of any kind to which the undersigned as guarantor(s) may be entitled, including without limitation all demands of payment on and notice of nonpayment, presentation, protest and dishonor to the undersigned, or other obligors of any instrument, including the Agreement, for which the undersigned is or may be liable hereunder. The undersigned further waives notice of and hereby consents to any agreements or arrangements whatever with the Client, or anyone else, including, without limitation, agreements and arrangements for payment extensions, subordination, composition arrangement, discharge or release of the whole or any part of the said obligations or of said indebtedness, contracts or agreements or other guarantees, or for the change or surrender of any of all security, or for compromise, whether by way of acceptance of part payment or of returns of merchandise or of dividends or in any other way whatsoever, and the same shall in no way impair the undersigned's liability hereunder.

The undersigned shall have no right of subrogation, reimbursement or indemnity whatsoever and no right of recourse to or with respect to any assets or property of the Client or to any collateral for the debts and obligations of the Client to BFC, unless and until all such debts and obligations shall have been paid in full. Nothing shall discharge or satisfy the liability of the undersigned hereunder except the full performance and payment of all the obligations and indebtedness of the Client to BFC. The undersigned agree(s) that if any default occurs under the Agreement or of any other agreement, guaranteed hereunder, then any and all obligations of the undersigned under this Guaranty or otherwise shall become forthwith due and payable. BFC's books and records showing the account of the Client with BFC shall be admissible in evidence in any action or proceeding, and any statement of the Client's account which is rendered to the Client shall, to the extent to which no objection is made within thirty (30) days after the date that such statement was rendered to Client, constitute an account between the Client and BFC and be binding upon the undersigned. This instrument is a continuing guaranty which shall remain in full force and effect and shall not be terminable so long as the Agreement with the Client, or any renewals, continuations, modifications, supplements and amendments thereto or any obligations thereunder shall remain in full force and effect. No invalidity, irregularity or unenforceability of all or any part of the obligations hereby guaranteed or of any of the security therefore shall affect or impair the guaranty of the undersigned hereunder. The obligations hereunder shall constitute primary and not secondary obligations. The undersigned, in recognition of the greater costs and delays incurred by a jury trial, hereby waives any and all right to a trial by jury in any jurisdiction in any court in any action based hereon. Undersigned further agrees that any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Association, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The undersigned hereby consents to the exclusive jurisdiction of any court of competent jurisdiction of the Commonwealth of Massachusetts and of any federal court located in such Commonwealth and venue in either the United States District Court for the District of Massachusetts or the county or district court of jurisdiction for a determination of any dispute as to any matters whatsoever arising out of or in any way connected with this Guaranty and authorize the service of process on the undersigned by certified or registered mail sent to the undersigned at the address of the undersigned set forth below. The undersigned each do hereby represent and warrant to BFC that the execution and delivery of this instrument to BFC by the undersigned has been duly authorized by all necessary actions of Boards of Directors and Shareholders of any undersigned Limited Liability Company, is validly issued in accordance with the certificate of inCorporation and by-laws of any undersigned Limited Liability Company and in accordance with any statutes applicable thereto. If any claim is ever made upon BFC for repayment or recovery of any amount or amounts received by BFC in payment or on account of any of the indebtedness or liabilities of the Client and BFC repays all or any part of said amount by reason of (1) a judgment, decree or order of any court or administrative body having jurisdiction over BFC or by levy and execution upon any of BFC's property, or (2) any settlement or compromise of any such claim affected by BFC with any such claimant (including the client or any guarantors hereunder), then and in such event the undersigned agrees that any such judgment, decree, order, settlement or compromise shall be binding upon the undersigned, not withstanding any revocation hereof or cancellation of any note or any other instrument evidencing any liability of the Client to BFC and the undersigned shall pay such amounts to BFC as part of the obligation of the undersigned hereunder.

No delay on BFC's part in exercising any of BFC's options, powers or rights, or partial or singular exercise thereof, shall constitute a waiver hereof. No waiver of any of BFC's rights hereunder and no modification or amendment of this Guaranty shall be deemed to be made by BFC unless the same shall be in writing, duly signed on BFC's behalf by an authorized officer, and each such waiver, if any, shall apply only with respect to the specific instance involved, and shall in no way impair BFC's rights or the obligations of the undersigned to BFC in any other respect at any other time. This instrument cannot be changed or terminated orally, and shall be interpreted according to the laws of the Commonwealth of Massachusetts, the place of origin of this Guaranty. This instrument shall be binding on the administrators, successors and assigns of the undersigned and shall inure to the benefit of BFC and its successors and assigns.

INITIALS: Guarantor(s):

required at BFC's discretion , to perfect a security interest in the collateral (described below) offered by Client as security for the performance by Client of Client's obligations hereunder. In addition thereto, Client shall pay all out-of-pocket expenses incurred by BFC in connection with any transaction related to or incurred on behalf of or in connection with Client including but not limited to Federal Express costs (or similar expenses), wire transfers, certified mail costs, facsimile machine transmission costs, lien searches of all description including but not limited to periodic tax lien searches, attorney's fees and credit investigation charges, together with all special service charges contained on BFC's Special Service Charge Schedule published from time to time by BFC. A copy of the current Special Service Charge Schedule is attached hereto and incorporated herein by reference as though set forth at length. Said schedule may be amended from time to time by BFC and notice of such changes shall be given to Client. Any costs not previously paid by Client as well as any other amounts due BFC, including, without limiting the generality thereof, any Repurchase Amount (hereinafter defined) due to BFC shall also be deducted from the proceeds due Client.

3.   **Representations and Covenants; Repurchase of Accounts**:  The Client represents, warrants and covenants to BFC with respect to each Account, as of the date of delivery and purchase of each such Account (a) Client's principal place of business, its financial books and records relating to the Accounts and the Accounts are located at the address set forth below; (b) Client owns the Accounts free and clear of liens, security interest, or encumbrances except to BFC and will not assign, sell, mortgage, lease, transfer, pledge, grant a security interest in or encumber or otherwise dispose of or abandon any part of or all of the Accounts without the prior written consent of BFC; (c) Client has made proper entries upon its books, disclosing the absolute sale of Accounts to BFC; (d) each of the Debtors named in the Account has legal capacity to contract and is indebted to Client in the amount indicated in the books and records of Client; (e) every Account is a certain undisputed claim for labor done by Client or for goods shipped by Client and is not subject to any set-off or counterclaim, and will not be contingent upon the fulfillment of any contract or condition whatsoever, and BFC may verify all such Accounts or any portion thereof; (f) each Debtor named in each account is solvent and will remain so until the maturity thereof, and each Account will be paid in full on or before the date shown as its due date on the Schedule of Accounts (Batch Invoice Processing Report along with supporting documentation), and if not so paid, Client will, upon demand, promptly pay any amount represented to be owing thereon to BFC; (g) if any debtor objects to the quality of property sold or work and labor done by Client, or rejects, returns, or fails or refuses to accept or receive any property represented by any Account, or if such property is rerouted or reconsigned, then the Client will forthwith pay to BFC the amount represented to be owing on such Account, and in the case of any property returned to Client, Client will hold such property in trust for BFC and subject to its order, until payment is made therefore by Client to BFC; (h) if any Account has not been paid in full to BFC for any reason whatsoever within 76 days from the date of initial purchase of the Account by BFC, based on an advance of seventy percent (70%) or less of the gross amount, or within 61 days from the date of initial purchase of the Account by BFC based on an advance of seventy-one percent (71%) or more of the gross amount ("Aged Account"), then BFC may require that the Client repurchase the Account for the amount of the Advance plus the Discount applicable thereto (herein called "Repurchase Amount"). If Client fails to pay the Repurchase Amount with respect to any Aged Account after demand by BFC, then such failure shall constitute a breach of this agreement; (i) if any allowance or credit on any Account is given by the Client, then Client shall pay the amount thereof immediately to BFC; (j) Client, upon demand, will open all mail in the presence of a representative of BFC who may take therefrom any remittances on Accounts sold by Client; (k) BFC may endorse the name of the Client upon any such remittances, if payable to Client, and may sign and endorse the name of Client on any invoice, freight bill, bill of lading, storage receipt, warehouse receipt, or any other instrument or document in respect of any Account, and may sign the name of Client on any notices BFC may give to Debtors; (l) BFC may, from time to time, enter client's premises to inspect, check, make copies of or extracts from the books, Accounts, orders, and original correspondence relating to Accounts, and Client will make available its books, records and files to BFC at any time for such purposes; (m) BFC may hold for purchase or as security any Accounts, property, securities, guarantees, or monies of Client, which may at any time be assigned to, delivered to, or come into the possession of BFC, and may apply these or the proceeds thereof to the payment of any amounts which at any time, then or thereafter, are or might be owing to BFC by Client; (n) if any Debtor suspends business, requests a general extension of time within which to pay its debts, or makes an assignment for the benefit of creditors, or if a petition in bankruptcy, or in equity for receivership, or for reorganization under the Bankruptcy Code or any amendment thereof is filed against any Debtor, or a creditor's committee is named for any Debtor, or in the event of the occurrence of any act whatsoever amounting to a business failure by any Debtor, then in such event Client will immediately pay to BFC the amount represented to be owing by such Debtor on any Account; (o) if Client fails to perform promptly or violates any of the provisions or obligations herein contained, then Client shall pay BFC all attorney's fees, court costs, and all other expenses which may be expended or incurred by BFC to obtain or enforce payment of any Account, either against the Debtor, Client, or any guarantors, or expended or incurred in the prosecution of any action against Client or any guarantors concerning any matter growing out of or connected with the subject matter of this Agreement and Accounts purchased herein; (p) Client will execute and deliver to BFC any and all instruments or documents, and do any and all things, necessary or convenient to carry into effect the provisions of this Agreement, and to facilitate the collection of any Accounts; (q) Client does not own, control or exercise dominion, in any way whatsoever, over the business of any of the Debtors.

4.   **Collection of Accounts**:  Client hereby authorizes BFC to collect Accounts from the Debtors.  Client agrees that it will transmit and deliver to BFC through its main office  in Charlestown, Massachusetts, on the dates of receipt thereof, all original checks, notes, drafts, acceptances, or other evidences or forms of payment received by Client in payment of, or on account of, any Accounts sold to BFC, and BFC shall accept at par, subject to payment, all such remittances. BFC may notify any Debtor, and Client does hereby constitute and appoint BFC its attorney-in-fact irrevocably for it and in its name, and at the cost and expense of Client, to demand, collect, compromise, sue for, and institute and complete any actions or proceedings whatsoever for the collection of any monies due upon any Accounts. Client agrees to sign, as part of this Agreement, Notices of Assignment of Accounts of Client, copies of which will be provided to each of Client's account debtors both now existing and to be created. Said Notice(s) of Assignment of Accounts of Client state, amongst other things:  (1) that the Notice of Assignment of Accounts is a blanket assignment of all accounts due Client and is not limited to any job, project, purchase order, invoice or group of invoices unless specifically noted to the contrary; (2)  that the account debtor should make all payments due on Client's Accounts to Client, c/o Boston Financial Corporation; and  (3) that the Notice of Assignment of Accounts is an irrevocable directive and will continue in full force and effect unless and until the account debtor is notified in writing by BFC of any change in instructions or of the termination of this Agreement. Client does hereby designate and appoint BFC, its successors or assigns, its true and lawful attorney(s) with irrevocable power for it and in its name, place and stead to ask, demand, compound, receive, receipt for and file acquittances for any and all amounts which may be or become due and payable by now existing or future created account debtors and in its discretion to file any claim or to take any other action or proceeding either in its own name or in the name of the Client, or otherwise, which to BFC or any such successor or assign thereof may deem necessary or desirable in order to collect or enforce the payment of any or all amounts which may become due or owing on any Account, purchase order or contract issued by or due from said account debtors.

5.   **Lien and Security Interest**:
      (a)   To secure the payment of any of its obligations to BFC, Client hereby grants to BFC a continuing security interest in all personal property and assets in which Client has an interest, now or hereafter existing or acquired, and wheresoever located, tangible or intangible, including but not limited to all present and hereafter existing or acquired equipment, goods, inventory, furniture, fixtures, receivables, Accounts, security agreements, notes, bills, acceptances, installment paper, certificates of deposit, letters of credit, letter of credit rights, deposit accounts, tax refunds, insurance proceeds, conditional sale or lease contracts, chattel mortgages or deeds of trust, general intangibles, contract rights,

INITIALS:Client:_____  _____  _____   BFC: _____

Rv3.2-9/3/02

4 - L

# CERTIFICATE OF LIMITED LIABILITY COMPANY RESOLUTION

We, Gregory C. Grant and Deborah A. Bartolini, Members of Prime Star, LLC., a Limited Liability Company organized under the laws of the State of Rhode Island and Providence Plantations do hereby certify that at a special meeting of the Members of said Limited Liability Company, duly held at its offices on _____June 19_____, 2003, at which a quorum was present and acting throughout, the following resolutions were duly moved, seconded and unanimously adopted:

RESOLVED: That it is to the best interest of this company to enter into certain financial accommodations with Boston Financial Corporation (hereinafter referred to as BFC) on such terms as may seem to the President or Treasurer or any member or Chairman of the Board of Directors or Chairman of the Executive Committee of the company advisable, and such member is authorized and empowered to enter into, execute and deliver to BFC all documents necessary to effectuate such financial accommodations including but not limited to a Consulting/Factoring/Security Agreement or the agreement however entitled and identified, Security Agreements, Financing Statements, drafts, acceptances of this company; to execute Power of Attorney; to assign accounts receivable as collateral security; to execute applications for letter of credit; to pledge inventory or material as collateral security for any obligation; to assign with full recourse to BFC third party promissory notes, conditional sales contracts, chattel mortgages or other third party evidences of indebtedness; to execute mortgages on the real or personal property of this company to BFC as security for any obligation; to execute assignments or satisfaction of any mechanic's lien; to execute security instruments and financing statements under the Uniform Commercial Code; to assign letters of credit in favor of this company to BFC as security for any obligation; to deliver financial and other statements of this company to BFC and to make, execute and deliver any and all agreements, security instruments, documents and certificates as may from time to time be required by BFC to carry out and give effect to the above; and as security to pledge or assign and deliver accounts receivable or any other indebtedness or choses in action, stocks, bonds, bills, receivables and other negotiable paper, bills of lading, warehouse receipts, insurance policies and certificates of any other property held by or belonging to this company and such member has full authority to endorse, assign or guarantee the same in the names of this company; to guarantee the obligations of any other person, firm or Limited Liability Company to BFC; and such member is hereby empowered to withdraw from BFC or to authorize BFC to deliver to such member or to one or more designated employees of this company any or all documents and securities or other property held by BFC in pledge or otherwise; and it was further

RESOLVED: That any officer, agent or nominee of BFC is hereby authorized to endorse the name of this Limited Liability Company to any and all checks, drafts and other instruments or orders for the payment of money payable to this Limited Liability Company or its order; to deposit the same in any account or accounts of BFC with any bank or trust company, and to deal with any and all such checks, drafts and other instruments or orders for the payment of money, and proceeds thereof as the property of BFC; and it was further

RESOLVED: That any bank or trust company be, and it hereby is, authorized and requested to receive for deposit to the credit of BFC without further inquiry, all such checks, drafts and other orders or instruments for the payment of money, payable to this Limited Liability Company for the deposition which said BFC may or shall make of the said instruments or proceeds thereof."

I further certify that the foregoing resolutions remain in full force and effect, have not been rescinded or modified, and conform with the charter and by-laws of the Limited Liability Company.

IN WITNESS WHEREOF, I have hereunto set my hand as Clerk of said Limited Liability Company and affixes its corporate seal, by order of its Board of Directors this 24th day of June, 2003.

ATTEST:

   (Seal)

Seen and Acknowledged:

_____
Gregory C. Grant 49% Member

_____
Deborah A. Bartolini, 51% Member

ACKNOWLEDGMENTS:

COMMONWEALTH OF MASSACHUSETTS
County of _____Suffolk_____

On this 24th day of June, 2003 before me, a Notary Public, personally appeared Gregory C. Grant of Prime Star, LLC., a Limited Liability Company, and that as such Gregory C. Grant has stated that he/she is authorized to execute and acknowledge the foregoing instrument on behalf of said Limited Liability Company for the purposes contained therein, by signing the name of the Limited Liability Company by himself/herself as 49% Member and that he/she in fact so executed and acknowledged the instrument before me on the date written above.

Notary Public: _____, Erin Finnell Hall    My commission expires:_____November 27, 2009.

COMMONWEALTH OF MASSACHUSETTS
County of _____Suffolk_____

On this 24th day of June, 2003 before me, a Notary Public, personally appeared Deborah A. Bartolini of Prime Star, LLC., a Limited Liability Company, and that as such Deborah A. Bartolini has stated that he/she is authorized to execute and acknowledge the foregoing instrument on behalf of said Limited Liability Company for the purposes contained therein, by signing the name of the Limited Liability Company by himself/herself as 51% Member and that he/she in fact so executed and acknowledged the instrument before me on the date written above.

Notary Public: _____, Erin Finnell Hall    My commission expires:_____November 27, 2009.

commercial tort claims, investment property, documents, instruments and all other hypothecations, and promises or duties to pay money, now or hereafter owned or acquired by Client, and all proceeds and collections thereof, all guarantees and other security therefor, and all right, title and interest of Client in any repossessed or unshipped goods, together with all of Debtors' books of accounts, ledger cards and records, all vehicles and vessels, all intellectual property, all computer programs and systems owned or operated in connection therewith, all customer lists, all of the above securing present and future advances and all proceeds, products, returns, additions, accessions and substitutions of and to pay any of the foregoing (all of which is sometimes hereinafter referred to collectively as "Collateral"). BFC shall have the right to use the name of Client in enforcing BFC's rights hereunder.

(b)    The Client will make due and timely payment or deposit of all taxes, assessments, or contributions required by law which may be lawfully levied or assessed with respect to any of the Collateral and will execute and deliver to BFC, on demand, appropriate certificates attesting to the timely payment or deposit of all such taxes, assessments or contributions. The Client will use the Collateral for lawful purposes only, and with all reasonable care and caution, and in conformity with all applicable laws, ordinances and regulations. At its own cost and expense the Client will keep the Collateral in first class order, repair and condition.

(c)    BFC shall at all times have free access to Client's place(s) of business and free access to and the right of inspection of any part or all of the Collateral and any records of the Client (and the right to make extracts from such records), and the Client shall deliver to BFC the originals or true copies of such papers and instruments relating to any or all of the Collateral as BFC may request at any time and shall fully cooperate with BFC and shall comply with any of BFC's reasonable requests.

(d)    Upon request of BFC, Client shall pledge, assign and deliver the Collateral to BFC at its office in Charlestown, Massachusetts, or such other place(s) as BFC may designate, together with schedules executed by Client, listing the Collateral and fully and correctly specifying in adequate detail the aggregate unmatured, unpaid face amount of each item of account and the amount of the deferred installments thereof falling due each month. The schedule shall be of form and tenor satisfactory to BFC. Any representations, warranties, guarantees and undertakings contained in this Agreement, and all rights and remedies of BFC hereunder or under said schedules, endorsement or other undertakings shall be cumulative and none is exclusive. Client agrees that BFC may from time to time verify the validity, amount and other matters relating to the Collateral by means of mail, telephone or otherwise in the name of Client, BFC or such other names as BFC may choose.

(e)    Failure of Client to include any item of Collateral in any schedule, or failure to deliver physical possession of any instruments, documents or writings in respect of any Collateral shall not invalidate BFC's lien and security interest therein, except to the extent that possession may be required by applicable law for the perfection of said lien or security interest.

(f)    Failure of BFC to demand or require Client to include any items of Collateral in any schedule, to execute any schedule, to assign and deliver any schedule, or to deliver physical possession of any instruments, documents or writings related to the Collateral shall not relieve Client of its duty to do so.

(g)    After the occurrence of any event of default, as defined in Paragraph 7 hereof, and until such default is either cured or waived by BFC in writing, BFC may, without prior notice to Client, apply all or any part of the proceeds of any Advance or Advances thereafter made upon any schedule or schedules along with any Reserves held, minus Discount earned, in reduction of any of Client's obligations to BFC.

(h)    All indebtedness and obligations of Client to BFC under this and under all other agreements, present and future, constitute one general obligation secured by Collateral and security held and to be held by BFC hereunder and by virtue of all other agreements between Client and BFC, now and hereafter existing. It is distinctly understood and agreed that all of the rights of BFC contained in this Agreement shall likewise apply insofar as applicable to any modification of or supplement to this Agreement and to any other agreements, present and future between BFC and Client.

(i)    Without written consent of BFC, Client will not allow any Financing Statement or Notice of Assignment of Accounts Receivable other than those executed or filed by Client and BFC as a result of purchases or Advances hereunder to be on file in any public office covering any of Client's accounts receivable, proceeds thereof or other matters subject to the security interest granted to BFC of this Agreement.

6.    **Prefunding**: BFC may from time to time, at Client's request , but in its sole discretion, advance monies to or on behalf of Client (a "prefunding") when there are no accounts which BFC can presently purchase as described in Paragraphs 1 hereof. In the event such a prefunding is made, the parties agree to the following:

(a)    **Acceptance**--- By accepting such prefunding, Client represents and warrants that the prefunding will be used, exclusively, to deliver its goods or services for which a valid purchase order or contract exists, whether received orally or in writing and that as a result of said prefunding, valid Accounts will be generated.

(b)    **Accounts**---A hypothetical gross receivable will be created for each prefunding.

(c)    **Advance**---The hypothetical gross receivable will be funded with actual dollars in the same manner and at the agreed upon prefunding rate as an actual receivable is funded, unless otherwise specified. Thus, for example, if the Client desires $15,000.00 cash, has no accounts as defined in Paragraph 1 hereof to sell, and the advance rate being used by the parties is 60%, BFC may, in its sole discretion, advance 60% of a $25,000.00 hypothetical gross receivable, or a $15,000.00 net prefunding to the Client.

(d)    **Charges**---The discount charged on a prefunding will be applied in the same manner as the discounts applied to the purchase of actual accounts and will become effective on the date of prefunding and at the established prefunding rate. Thus, for example, if $15,000.00 is advanced against a hypothetical gross receivable of $25,000.00, at the time of repayment of the prefunding, the $15,000.00 plus the applicable discount specified in the Prefunding Rate Sheet shall be paid to BFC.

(e)    **Repurchase**---Prefunding shall become an Aged Account and shall be subject to Repurchase obligations in the same time periods and in the same manner as set forth in Paragraph 3(h) hereof.

7.    **Default**: If Client defaults in the performance of any provision of this Agreement, suspends business voluntarily or involuntarily, makes an assignment for the benefit of creditors, or if a receiver is appointed for the property of Client, or if a petition in bankruptcy, or in equity for receivership, or for reorganization under the Bankruptcy Code or any amendment thereof, is filed by or against Client, or a creditor's committee is named for Client, or in the event of occurrence of any act whatsoever amounting to a business failure by Client, or if Client fails to notify BFC of any change in members, directors or stockholders of Client not occasioned by death, BFC shall have the following rights and remedies in addition to all the rights and remedies provided in this Agreement and in the Uniform Commercial Code in force in the Commonwealth of Massachusetts at the date of this Agreement, all such rights and remedies being cumulative and not exclusive:

(a)    Client will, on demand, repurchase from BFC at the Repurchase Amount, less any Reserves owed by BFC to Client hereunder, all the outstanding and unpaid Accounts and upon failure to do so, BFC may liquidate Accounts by sale at public or private sale, on ten (10) days notice by registered mail to Client, or on such notice as may be required by law, at which sale BFC may bid for and purchase Accounts free from any right or equity of redemption of Client, and the net proceeds of such sale shall be applied against the repurchase price, and the Client shall be entitled to any surplus, or shall pay any deficiency on demand and upon failure of such payment shall pay, in addition thereto, interest on such amount at the rate of 20% per annum, plus all attorneys' fees and collection costs incurred by BFC in collecting such amounts from Client.

(b)    BFC may, at any time and from time to time, with or without process of law and with or without the aid and assistance of others, enter upon any premises whatsoever in which the Collateral or any part thereof may be located, and without resistance or interference by the Client, take

INITIALS:  Client: _____  _____  BFC: _____

# EXHIBIT B

possession of the Collateral; and/or ⌐ ¸ose of all or any part of the Collateral on any pre ˷es of the Client; and/or require the Client to assemble and make available to BFC all or any part of the Collateral at any place and time designated by BFC which is reasonable and convenient to BFC and the Client; and/or remove all or any part of the Collateral from any premises on which any part thereof may be located for the purpose of effecting sale or other disposition thereof; and/or sell, resell, lease, assign and deliver, or otherwise dispose of, the Collateral or any part thereof in its existing condition or following any commercially reasonable preparation or processing, at public or private proceedings, in one or more parcels at the same or different times with or without having the Collateral at the place of sale or other disposition, for cash, upon credit or for future delivery, and in connection therewith BFC may grant options, at such place and time or times and to such persons, firms or Corporations as BFC deems best, and without demand for performance or any notice or advertisement whatsoever except that where an applicable statute requires reasonable notice of sale or other disposition, the Client hereby agrees that five (5) days notice by ordinary mail, postage prepaid, to any address of the Client set forth on this Agreement, of the place and time of any public sale or of the place and time after which any private sale or other disposition may be made, shall be deemed reasonable notice of such sale or other disposition; and/or liquidate or dispose of the Collateral or any part thereof in any other commercially reasonable manner.

The Client hereby waives all equity and right of redemption. BFC may buy any part or all of the Collateral at any public sale and if any part of or all of the Collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, BFC may buy at private sale, all free from any equity or right of redemption which is hereby waived and released by the Client, and BFC may make payment therefore (by endorsement without recourse) in notes of the Client to the order of BFC in lieu of cash to the amount then due thereon which the Client hereby agrees to accept.

BFC may apply the cash proceeds actually received from any sale or other disposition to the reasonable expenses of retaking, holding, preparing for sale, selling, leasing, and the like, to reasonable attorney's fees if this Agreement is referred to an attorney for enforcement, to all legal expenses, court costs, collection charges, travel and other expenses which may be incurred by BFC in attempting to collect the payment of any obligations to BFC or to enforce this Agreement and realize upon the Collateral, or in the prosecution or defense of any action or proceeding related to the subject matter of this Agreement; and then to payment of any obligations to BFC, in such order and as to principal or interest as BFC may desire; and the Client shall at all times be and remain liable and, after crediting the net proceeds of sale or other disposition as aforesaid, will pay BFC on demand any deficiency remaining, including interest thereon at the rate of 20% per annum and the balance of any expenses at any time unpaid, with any surplus to be paid to the Client.

(c)  BFC shall have the right to notify the U.S. Postal Service authorities to change the address for the delivery of mail addressed to Client to such address as BFC may designate and Client hereby grants to BFC an irrevocable Power of Attorney to sign and execute all forms necessary for the change of address, and Client hereby designates BFC as its agent to receive and open Client's mail.

(d)  It is agreed by and between the parties that the bankruptcy, insolvency or dissolution of any guarantor of this contract and/or the purported or attempted termination or repudiation of any guaranty of this contract, in whole or in part shall be deemed an incident of default with respect to this contract.

8.  **Modifications:** BFC may, without notice to Client, grant extensions to, or adjust claims, or make compromises, compositions, or settlements with Debtors with respect to any Accounts, or securities or insurance applying thereon, without affecting the liability of Client hereunder.

9.  **Waiver:** Client waives notice of non-payment, protest and demand, or notice of protest and demand, of any Accounts, or any securities or instruments relating to any such Accounts. Client, in recognition of the greater costs and delays incurred by a jury trial, hereby waives any and all rights to a trial by jury in any jurisdiction in any court in any action based hereon. No waiver by BFC of any of its rights shall operate as a waiver of any other of its rights or any of its rights on a future occasion. All rights and remedies herein are cumulative and not alternative.

10. **Other Services:** In addition to the above and foregoing, Client may purchase and BFC may provide the following services:

(a)  **Letters of Guaranty:** BFC may, from time to time, at the request of the Client, but in it sole discretion, extend Letters of Guaranty to Client's suppliers, banks or others to accommodate Client's needs in the operation of its business. The Client authorizes BFC, without reference to or approval by Client, to set forth the terms and conditions in said Letter of Guaranty and in such language as BFC in its sole discretion may deem appropriate and necessary. Client shall complete a Letter of Guaranty Application form in connection with each Letter of Guaranty on a form to be provided by BFC. The charges for each Letter of Guaranty shall be __negotiated__ percent (___%) up to sixty (60) days, __negotiated__ percent (___%) up to ninety (90) days, or __negotiated__ percent (___%) up to one hundred twenty (120) days of the face amount of each such Letter of Guaranty. All such charges are subject to change by BFC upon written notice to Client. BFC may use all security accounts and protections afforded by this Agreement to satisfy the repayment of any funds advanced by BFC pursuant to a Letter of Guaranty not otherwise paid as well as charges in connection therewith if Client does not otherwise repay BFC. BFC may apply such amounts otherwise due Client from other accounts or other assets or reserves which are secured by BFC for any purpose to the repayment of such amounts disbursed and charges. In consideration of BFC issuing any Letters of Guaranty, the Client undertakes to repay all amounts advanced pursuant to such Letters of Guaranty and all charges in connection therewith. Any such repayment shall be made upon demand or as otherwise provided by BFC in its sole discretion.

(b)  **Letters of Credit:** BFC may, from time to time, at the request of Client, but in its sole discretion obtain for the benefit of Client, Letters of Credit to Client's suppliers or others to accommodate Client's needs in the operation of its business. The Client authorizes BFC, without reference to or approval by Client, to cause to be set forth the terms and conditions of said Letters of Credit and in such language as BFC, in its sole discretion, may deem appropriate and necessary. Client shall complete a Letter of Credit Application form in connection with each Letter of Credit on a form to be provided by BFC. The charges for each Letter of Credit shall be __negotiated__ percent (_____%) of the face amount of each such Letter of Credit up to ninety (90) days and __Negotiated__ percent (_____%)of the face amount of each such Letter of Credit for each additional ninety (90) days or fraction thereof that the Letter of Credit is outstanding plus any additional bank charges including the initial issuance charge incurred by BFC in reference to any Letter of Credit obtained for the benefit of Client. All such charges are subject to change by BFC upon written notice to the client. BFC may use all security accounts and protections afforded by this Agreement to satisfy the repayment of any funds advanced by BFC pursuant to a Letter of Credit not otherwise paid as well as all charges in connection therewith if Client does not otherwise repay BFC. BFC may apply such amount otherwise due Client from other accounts or other assets which are secured by BFC for any purpose to the repayment of such amounts disbursed and for such charges. In consideration of BFC obtaining any Letters of Credit, Client undertakes to repay all amounts advanced pursuant to such Letters of Credit and all charges in connection therewith. Any such repayment shall be made upon demand or as otherwise provided by BFC in its sole discretion.

(c)  **Check Clearance:** BFC may, from time to time, at the request of the Client, but in its sole discretion and to accommodate Client's needs in the operation of its business, provide to Client instant clearance of its checks. Such instant clearance of Client's checks shall be on terms and conditions determined by BFC in its sole discretion. The charges for such instant check clearing service shall be a minimum charge of $25.00 on the Instant Clearance of any check. A two percent (2%) charge on each check up to $10,000.00 will be the basic charge or the $25.00 minimum charge, whichever is greater. The charge on all checks over $10,000.00 will be $200.00 plus one and one-half percent (1.5%) of the amount over $10,000.00. Such instant check clearance shall be with full recourse to the Client should any check not be cleared or honored at any point subsequent to its acceptance by BFC. If any check should be dishonored at any point subsequent to its acceptance by BFC, there

**INITIALS:**    Client: _DAB_ _(signature)_ _____    BFC: _(signature)_

Rv3.2-9/3/02

**ACKNOWLEDGMENTS CON'T:**


COMMONWEALTH OF MASSACHUSETTS

County of _____ Suffolk____

On this 24th day of June, 2003 before me, a Notary Public, personally appeared **Deborah A. Bartolini** of Prime Star, LLC., a Limited Liability Company, and that as such **Deborah A. Bartolini** has stated that he/she is authorized to execute and acknowledge the foregoing instrument on behalf of said Limited Liability Company for the purposes contained therein, by signing the name of the Limited Liability Company by himself/herself as **51% Member** and that he/she in fact so executed and acknowledged the instrument before me on the date written above.

Notary Public: _____, Erin Finnell Hall

My commission expires:_____November 27, 2009.



**(Boston Financial Corporation)**

COMMONWEALTH OF MASSACHUSETTS

County of _____ Suffolk____

On this 24th day of June, 2003 before me, a Notary Public, personally appeared **Frank A. Coviello** of BOSTON FINANCIAL CORPORATION, a Corporation, and that as such **Frank A. Coviello** has stated that he is authorized to execute and acknowledge the foregoing instrument on behalf of said Corporation for the purposes contained therein, by signing the name of the Corporation by himself as **President** and that he in fact so executed and acknowledged the instrument before me on the date written above.

Notary Public: _____, Erin Finnell Hall

My commission expires:_____November 27, 2009.

shall be an additional service charge t̶    ̶ent of $100.00 or one percent (1%) of the amount o̶    ̶ check whichever is greater. BFC may use all security, accounts, reserves and protections afforded by this Agreement to satisfy the repayment of any funds advanced by BFC pursuant to such instant check clearance procedure not otherwise paid as well as charges in connection therewith if Client does not otherwise pay BFC. BFC may apply such amount otherwise due Client from other accounts or other assets which are secured by BFC for any purpose to the repayment of such amounts disbursed and for such charges. In consideration of BFC obtaining such instant check clearances, Client undertakes to repay all amounts advanced pursuant to such instant check clearance and all charges in connection therewith. Any such repayment shall be made upon demand or as otherwise provided by BFC in its sole discretion.

11. **Benefit**: This Agreement shall be binding upon and inure to the benefit of the parties, their legal representatives, successors and assigns.

12. **Place of Business**: Client warrants and represents that its only place of business, including warehouse and storage, are those set forth below or otherwise previously notified to BFC in writing, and that BFC will be notified promptly of any change of location of any place of business or record keeping or the addition of any new place of business or record keeping. Client further warrants and represents that the only office where it keeps its records concerning the Accounts herein referred to is at its chief place of business set forth below.

13. **Assignment**: This Agreement may be assigned by BFC without notice to Client. However, this Agreement, herein, may not be assigned by Client without written consent of BFC.

14. **Amendment**: This Agreement contains the entire Agreement of the parties hereto and neither shall be bound by anything not expressed in writing.

15. **Construction, Jurisdiction and Consent to Service of Process**:
    (a) The validity, interpretation and effect of this Agreement shall be governed by the laws of the Commonwealth of Massachusetts which is the place of origin of the Agreement. The Client hereby consents to the exclusive jurisdiction of all Courts in Massachusetts and venue in either the United States District Court for District of Massachusetts or the county or district court of jurisdiction.
    (b) Client agrees to notify BFC and any agent referred to below, in writing, of any change of address which differs from that appearing on this Agreement. Client also agrees that if BFC and agent are not so notified by certified mail of any change in the address of the chief place of business of the Client, that process and notices may be sent to the last known address communicated to BFC in that manner and that notice shall be good, valid and binding.
    (c) Client hereby authorizes the above named agent to send any notice, via certified mail, return receipt requested, to Client's chief place of business listed below; if Client's chief place of business is in the Commonwealth of Massachusetts, and Client has complied with subparagraph (b), hereof, then said notification shall be by normal service of process or mail and not through the agent.

16. **Power of Attorney - Client**: Client hereby appoints and authorizes Frank A. Coviello and/or any officer, agent or nominee appointed by BFC as its attorney-in-fact to endorse on its behalf Client's name on UCC Financing Statements and Statements of Amendment to reflect any change of location of any place of business or record keeping or the addition of any new place of business or record keeping of Client. Client hereby appoints and authorizes BFC as its attorney-in-fact to endorse on its behalf Client's name on checks, or other forms of remittance received where such endorsement may be required to affect collections and as to any forms of collateral, such as letters of credit, deeds of trust, notes, deeds, etc., where said collateral must be looked to by BFC for collection of Client's obligations hereunder. These powers shall permit BFC to deal generally in all respects, without restriction, in and with any of the property that constitutes either the Accounts secured hereunder, or the Collateral described herein. These powers of attorney shall be deemed to be coupled with an interest and shall not be revoked except with the prior written consent of BFC.

17. **Term**: This Agreement shall begin on the date first written above and continue in full force and effect until terminated upon thirty (30) days written notice by either PSL or BFC, except that the warranties and representations given hereunder to BFC and the remedies of BFC for breach of such warranties and representations shall survive the termination of this Agreement. Such termination shall also not affect the rights of BFC in enforcing its remedies concerning any collateral after default by Client, which occurred before the termination hereof, or enforcing its rights and remedies against Client.

<div align="center">----&lt;&lt;&lt;&lt; STRIKE THE PARAGRAPH NUMBERED 18 WHICH DOES NOT APPLY &gt;&gt;&gt;&gt;----</div>

18. ~~One-Time Purchase: The parties acknowledge that this Agreement is executed to facilitate the One-Time purchase of Accounts by BFC and do not contemplate a continuous course of purchase of Accounts by BFC. Client acknowledges that the rates set forth in this Agreement have been negotiated and established based on the One-Time purchase of acceptable Accounts Receivable and that there exists no further obligation or commitment to sell Accounts to BFC except as herein provided or as provided in the documents supporting, relating to or required by the various services provided by BFC. Client, with the approval of BFC, may renew this Agreement upon the payment of an additional fee and the reestablishment of discount rates which fee and discount rates shall be determined by mutual agreement by and between the parties prior to the time of such renewal.~~

18. **Continuing Purchases**:
(a) The parties contemplate a continuous course of purchase of accounts receivable by BFC and concurrent advances to Client during the terms of this Agreement. During the first year of this Agreement, Client shall not be limited to a minimum monthly requirement ("Minimum Accounts"). Therefore, Client agrees that if Client defaults in the performance of any provision of this Agreement or breaches any covenant, warranty or other representation made pursuant hereto so that acceptable accounts receivable in a reasonable amount are not purchased by BFC, BFC, in its sole discretion and upon 30 days written notice to PSL may terminate this Agreement or adjust base rates, advance rates and/or discount rates on future factored accounts receivable Said change in rates may be assessed by BFC at any time following such breach and failure of BFC to immediately assess said change in rates upon any individual breach of this covenant shall not constitute a waiver on BFC's part to assess the changes in rates at a later date. These new rates shall be collectable in the same manner as any other of the fees and expenses set forth in this Agreement.
(b) Client warrants that it shall not enter into any other factoring or similar agreement with any other entity or person during the term of this Agreement without prior written consent of BFC.

INITIALS:    Client: _JAP_ _____ _____    BFC: _____

Rv3.2-9/3/02

19. **Binding Arbitration.** The undersigned, in recognition of the greater costs and delays incurred by a jury trial, hereby agrees that any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

20. **Severability:** If for any reason any portion of this Agreement or related documents is deemed or ruled to be invalid for any reason whatsoever, then, in such event, all other portions of this Agreement and related documents shall continue in full force and effect.

21. **Indemnification:** Client agrees to indemnify BFC for any and all claims, demands, damages, actions, causes of actions and/or judgments including attorney's fees which BFC may have to pay and/or defend against with respect to any third party claims arising out of the transactions entered into pursuant to the terms and conditions of this instrument.

22. **Continuing Effect:** The provisions of this Agreement shall apply to all present and future transactions whereby BFC advances monies to Client or whereby Client sells or assigns Accounts to BFC.

23. **Additional Documents:** If one or more Schedules or Riders are executed by Client and/or BFC, the covenants and agreements of each such Schedule or Rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Agreement as if the Schedule(s)/Rider(s) were a part of this instrument.

The following documents, indicated by "X", are made part of this Agreement by reference, however, Additional Documents shall not be limited solely to those indicated below.

| | | | |
|---|---|---|---|
| X | Consult./Fact./Secur. Agree. Disc. Rate Schedule | X | Prefunding Rate Schedule |
| X | Special Services Charge Schedule | X | Schedule A (Schedule of Accounts Receivable Purchased) |
| X | Commitment Letter | X | Supplemental Agreement |

IN WITNESS WHEREOF, Client has executed this Agreement, and BFC has noted its acceptance by its authorized member, employee or representative.

**Attest:**   (Limited Liability Company)

Company:   **Prime Star, LLC.**
Address:      160 Burnside Street
City, St, Zip:  Cranston, RI 02910
TIN:  02-0667598

By: _____
Gregory C. Grant, 49% Member

(Limited Liability Company Seal)

By: _____
Deborah A. Bartolini, 51% Member

**Attest:**

**BOSTON FINANCIAL CORPORATION**
Flagship Wharf in the Navy Yard
197 Eighth Street, Suite 2000
Charlestown, MA 02129

By: _____
Frank A. Coviello, President

**ACKNOWLEDGMENTS:**

**(Limited Liability Company Members)**

COMMONWEALTH OF MASSACHUSETTS

County of _____ Suffolk ____

On this 24th day of June, 2003, before me, a Notary Public, personally appeared **Gregory C. Grant** of Prime Star, LLC., a Limited Liability Company, and that as such **Gregory C. Grant** has stated that he/she is authorized to execute and acknowledge the foregoing instrument on behalf of said Limited Liability Company for the purposes contained therein, by signing the name of the Limited Liability Company by himself/herself as **49% Member** and that he/she in fact so executed and acknowledged the instrument before me on the date written above.

Notary Public: _____, Erin Finnell Hall

My commission expires: _____ November 27, 2009 .

Rv3.2-9/3/02